ORIGINAL

19MAG 6049

Approved: _____
Robert L. Boone/Amanda Kramer
Assistant United States Attorneys

Before: HONORABLE SARAH NETBURN
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - x
                              :  **SEALED COMPLAINT**
UNITED STATES OF AMERICA      :
                              :  Violations of 15 U.S.C. §§
       - v. -                 :  78j(b) & 78ff; 17 C.F.R.
                              :  § 240.10b-5; 18 U.S.C. §§
PAUL A. RINFRET,              :  1343 and 2.
                              :
            Defendant.        :
                              :  COUNTY OF OFFENSES:
- - - - - - - - - - - - - - - x  New York

SOUTHERN DISTRICT OF NEW YORK, ss.:

GRAHAM SUGARMAN, being duly sworn, deposes and says that he is a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI") and charges as follows:

## COUNT ONE
### (Securities Fraud)

1. From at least in or about May 2016 through at least in or about June 2019, in the Southern District of New York and elsewhere, PAUL A. RINFRET, the defendant, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails and the facilities of national securities exchanges, in connection with the purchase and sale of securities, used and employed, and caused others to use and employ, manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing, and causing others to employ, devices, schemes, and artifices to defraud; (b) making, and causing others to make, untrue statements of material fact and omitting to state, and causing others to omit to state, material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging, and causing others to engage, in acts, practices, and courses of

business which operated and would operate as a fraud and deceit upon persons, to wit, RINFRET solicited and obtained millions of dollars from investors in Plandome Partners L.P., an entity he controlled, through false and misleading representations and then misappropriated those funds for his personal benefit.

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.)

## COUNT TWO
### (Wire Fraud)

2. From at least in or about May 2016 through at least in or about June 2019, in the Southern District of New York and elsewhere, PAUL A. RINFRET, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds for the purpose of executing such scheme and artifice, to wit, RINFRET, through the use of email messages, text messages, telephone calls and wire transfers, solicited and obtained millions of dollars from investors in Plandome Partners L.P., an entity he controlled, through false and misleading representations and then misappropriated those funds for his personal benefit.

(Title 18, United States Code, Sections 1343 and 2.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

3. I am currently employed as a Special Agent with HSI and have been a Special Agent since 2018. Prior to becoming a Special Agent, I worked as an attorney and analyst. Specifically, for approximately four years, I served as a staff attorney in the United States Attorney's Office for the Eastern District of New York handling civil fraud matters. Prior to that, I worked for approximately four years as an analyst at a financial services company. During my tenure with HSI, I have participated in multiple investigations of fraud. I am familiar with the facts and circumstances set forth below from my participation in the investigation of this case, from my personal knowledge, and from my conversations with other law enforcement officers and others. Because this Affidavit is being submitted for the limited purpose of establishing probable

2

cause, I have not included every fact I have learned during the investigation. Where the actions, statements and conversations of others are recounted herein, they are related in substance and in part, unless otherwise indicated.

## RELEVANT ENTITIES AND INDIVIDUALS

4. At all times relevant to this Complaint, PAUL A. RINFRET, the defendant, presented himself as a semi-retired and self-employed futures and foreign currency trader. During his career, RINFRET has been associated with and/or employed by several brokerage firms and investment banks. RINFRET has a wife ("Spouse-1") and three adult children: a son ("Son-1") and two daughters ("Daughter-1" and "Daughter-2"). In or about 1984, RINFRET was censured by the New York Stock Exchange for conduct that took place while he was employed at a particular investment bank.

5. At all times relevant to this Complaint, Plandome Partners L.P. ("Plandome Partners"), was a New York limited partnership formed in or about September 2011. While Plandome Partners was, in fact, controlled by PAUL A. RINFRET, the defendant, Daughter-1 is listed in formation documents as the general partner, and Son-1 is listed as a limited partner. Additionally, a bank account was opened for Plandome Partners with Daughter-1 listed as the only signatory and authorized user of the account (the "Plandome Bank Account"). RINFRET did not have signature authority on the Plandome Bank Account, nor does his name appear as an authorized user of the account.

## OVERVIEW OF RINFRET'S FRAUDULENT SCHEME

6. Based on interviews of several investors in Plandome Partners, my review of documents provided by these investors, my review of records of brokerage accounts and bank accounts related to Plandome Partners, and publicly-available documents, I have learned the following:

a. For several years, from at least in or about 2016 through in or about June 2019, PAUL A. RINFRET, the defendant, engaged in a scheme to defraud potential and actual investors in Plandome Partners (the "Victims") for his own enrichment. Specifically, RINFRET, through offering documents and personal investment pitches, offered potential investors the ability to invest in Plandome Partners through the purchase of limited partnership interests.

      b. In soliciting investments, RINFRET falsely represented to the Victims that he would use all of their investment funds to trade futures contracts tied to the Standard & Poor's 500 index[1] using a propriety trading algorithm he had developed, taking for himself a fee equivalent to 25% of the net profits on the trades. The majority of the Victims lived in Manhattan, New York, and RINFRET held meetings with at least two of the Victims in Manhattan, New York.

      c. Through his fraudulent scheme, RINFRET obtained more than $19 million in total from approximately six Victims on the false claim that he would trade the entirety of their investments.

      d. Both in offering documents and statements made directly by RINFRET to investors, RINFRET represented that Plandome Partners used brokerage accounts at three identified firms ("Brokerage Firm-1," "Brokerage Firm-2," and "Brokerage Firm-3") to execute trades.

      e. In truth and in fact, RINFRET used only a small portion of the Victims' invested funds to engage in actual trading. Instead, RINFRET used most of the Victims' money to purchase luxury goods and high-end vacation rentals for himself and family members. Additionally, when he did actually engage in trading with Victims' funds, he generated losses.

      f. To prevent his Victims from seeking a return of their money, and to induce additional investments, RINFRET falsely reported excellent investment performance results to the Victims through false and fraudulent monthly account statements that RINFRET typically emailed to the Victims.

### RINFRET'S MISREPRESENTATIONS TO VICTIM INVESTORS

7.    Based on interviews of several of the Victims, emails and text messages sent by PAUL A. RINFRET, the defendant, Plandome Partners offering documents provided to the Victims by RINFRET, and records for the brokerage and bank accounts affiliated with Plandome Partners, I have learned the following:

      a. In or about May 2016, RINFRET informed one of the Victims ("Victim-1") that a brokerage account for Plandome

---

[1] Based on my training and experience, I know that the Standard & Poor's ("S&P") 500 index is an American stock market index based on the market capitalizations of 500 large publicly-traded companies.

4

Partners had been established at Brokerage Firm-1. In truth, and in fact, Brokerage Firm-1 has never maintained an account for Plandome Partners or for RINFRET.

b. In addition, from at least in or about 2016 through in or about 2017, RINFRET repeatedly, and falsely, informed Victim-1 that Plandome Partners was successfully investing Victim-1's money. For example:

i. On or about June 24, 2016, RINFRET emailed Victim-1, stating, in sum and substance, "To follow up, today was a very good trading day (+70 basis points). While the volatility can be dizzying (yes I do suffer from occasional vertigo) we need it to make money. When volatility becomes really excessive I change some parameters (extreme caution) and continue to trade."

ii. On or about August 11, 2016, Victim-1 emailed RINFRET, informing him that Victim-1 intended to wire RINFRET an additional $200,000 to invest with Plandome Partners. RINFRET replied, in substance and in part, "The first eight trading days of this month have produced higher returns than the first eight trading days of July. The 200k will go into the new program and all of your existing funds will roll to that same account on the last business day of August."

iii. On or about September 9, 2016, RINFRET emailed Victim-1 stating, in sum and substance, "I think by now everyone knows that I like to communicate during or after a big move in the stock market. Today was our best day in memory. It should translate into a very good month. Our methodology continues to perform exceptionally well."

iv. On or about May 17, 2017, RINFRET emailed Victim-1 saying, in sum and substance, "As is my custom of reporting to you after large market moves I am pleased to announce a 2.15% gross gain today."

c. In reality, neither Plandome Partners nor RINFRET had been conducting any trading, successful or otherwise, with Victim-1's funds when these representations were made. As stated previously, neither Plandome Partners nor RINFRET ever held brokerage accounts at Brokerage Firm-1. Moreover, the brokerage accounts Plandome Partners held at Brokerage Firm-2 and Brokerage Firm-3 were not in existence until late 2017. Plandome Partners did not open a brokerage account at Brokerage Firm-2 until in or about November 2017, and Plandome Partners

did not open a brokerage account at Brokerage Firm-3 until in or about December 2017.

   d. RINFRET also repeatedly lied to another of the Victims ("Victim-2") about Plandome Partners' trading activity.  For example, RINFRET emailed Victim-2 documents purporting to be accurate monthly account statements from Brokerage Firm-2.  On December 4, 2018, RINFRET emailed Victim-2 documents purporting to be account statements from Brokerage Firm-2 for the month of November 2018.  Those documents show a beginning balance of approximately $20,719,615.29 and a net trading profit of approximately $1,168,180.70 for the month.  In fact, based on my review of actual account records from Brokerage Firm-2, I have learned that the beginning balance of Plandome Partners' account at Brokerage Firm-2 for that month was approximately $487,136 and there was a net trading loss that month of approximately $328,840.

   e. RINFRET also made false statements to another of the Victims ("Victim-3") similar to those made to Victim-1 and Victim-2.  For example, throughout 2018, RINFRET repeatedly sent falsified monthly account statements to Victim-3 showing consistent profits, when in fact, Plandome Partners lost money in every month in which it traded at Brokerage Firm-3 in 2018, and in nearly every month in which it traded at Brokerage Firm-2 in 2018.

   f. RINFRET also repeatedly lied to another of the Victims ("Victim-4") about Plandome Partners' trading activity.  For example, RINFRET emailed Victim-4 documents purporting to be accurate monthly account statements from Brokerage Firm-1 and Brokerage Firm-2.  On February 19, 2018, RINFRET emailed Victim-4 documents purporting to be accurate statements from Brokerage Firm-1 for the month of January 2018.  As stated previously, neither Plandome Partners nor RINFRET ever held brokerage accounts at Brokerage Firm-1.  The February 19, 2018, email to Victim-4 also included documents purporting to be accurate account statements from Brokerage Firm-2 for the month of January 2018.  Those statements show a beginning balance of approximately $5,520,812 and a net trading profit of approximately $204,930 for the month.  In fact, based on my review of actual account records from Brokerage Firm-2, I have learned that the beginning balance of Plandome Partners' account at Brokerage Firm-2 for that month was approximately $1,005,819 and there was a net trading loss that month of approximately $141,563.

8. Despite having repeatedly represented that the Victims' money would be invested and traded in brokerage accounts, PAUL A. RINFRET, the defendant, used money entrusted with him by the Victims to pay for luxury goods and experiences for himself and his family. For example:

    a. On or about February 2, 2017, the Plandome Bank Account transferred approximately $15,000 to a car dealership.

    b. On or about February 8 and February 10, 2017, the Plandome Bank Account made two transfers totaling approximately $9,000 to a fine watch and jewelry dealer.

    c. On or about February 21 and March 21, 2017, the Plandome Bank Account made two transfers totaling approximately $20,000 to a custom cabinet maker.

    d. Between on or about April 17 and June 19, 2017, the Plandome Bank Account made three transfers totaling $49,500 to the owner of a 6-bedroom house in Southampton, New York, with memo entries indicating that these were payments for RINFRET's rental of a Hamptons vacation home.

    e. On June 22, 2018, the Plandome Bank Account transferred approximately $31,221 to an online diamond and jewelry dealer. The memo entry for the wire transfer read "FROM: PAUL A. RINFRET," and provided an order number.

    f. On or about July 13 and September 15, 2017, the Plandome Bank Account made wire transfers totaling approximately $43,000 to a company that operates a high-end restaurant and event venue (the "Event Venue") in Manhattan. Based on publicly-available records, I know that Son-1 held his engagement party at the Event Venue on or about August 1, 2017 and that Son-1 got married on or about September 29, 2018.

    g. Between in or about 2016 and in or about June 2019, the Plandome Bank Account made transfers of more than $2.4 million in total to Son-1, Daughter-1, the business owned by Spouse-1 and Daughter-2, and other of RINFRET's relatives and their businesses.

### RINFRET'S FRAUD IS DETECTED

9. Based on interviews with Victims and my review of emails and text messages exchanged between PAUL A. RINFRET, the defendant, and the Victims, I know that:

7

a. Between in or about February and April, 2019, several Victims attempted to get RINFRET to return their money.

b. On or about April 5, 2019, after multiple attempts by Victim-3 to get RINFRET to return $5 million, RINFRET and Victim-3 spoke by phone. During the call, among other things, and in sum and substance, RINFRET admitted to Victim-3 that he had lost all of the investors' money, that his trading strategy had never worked, that performance information provided to investors had been fabricated, and that RINFRET had sent Son-1 falsified information to prepare the bogus monthly statements, but that Son-1 did not know about "the fraud." RINFRET further indicated that if he went to jail a lot of people would be hurt. During this call, RINFRET urged Victim-3 to give RINFRET time because RINFRET was trying to raise money to trade based on a new algorithm that works, and that this new algorithm will allow RINFRET to pay back all of the current investors.

c. On or about April 12, 2019, RINFRET made similar admissions to another victim ("Victim-5") who sought to redeem large sums of money from Victim-5's investment. Specifically, RINFERT told Victim-5 that all the money RINFRET was given to invest was gone and that he needed to raise another million dollars to invest to try to make everyone's money back. RINFRET indicated that Son-1 did not know about RINFRET's conduct and asked Victim-5 (who was a family friend) not to tell Spouse-1 about what had happened. RINFRET instructed Victim-5 to tell Victim-5's accountant that "the money was stolen."

d. In or about May and June 2019, Victim-5 participated in consensually recorded calls with RINFRET, in which RINFRET asked Victim-5 for $250,000. RINFRET claimed, in substance and in part, that the additional money would allow RINFRET to make enough money to pay back all of the investors.

e. During these recorded calls, RINFRET further claimed that he had already raised $250,000 from another person. When Victim-5 asked for proof, RINFRET emailed Victim-5 a falsified bank statement from the Plandome Bank Account that showed a $250,000 wire in from an individual ("Individual-1") on May 17, 2019. Based on my review of records from the Plandome Bank Account, no such transfer occurred, although the records indicate that Individual-1 did transfer $20,000 to RINFRET on May 20, 2019.

WHEREFORE, the deponent prays that an arrest warrant be issued for PAUL A. RINFRET, the defendant, and that he be imprisoned or bailed as the case may be.

GRAHAM SUGARMAN
SPECIAL AGENT
DEPARTMENT OF HOMELAND SECURITY,
HOMELAND SECURITY INVESTIGATIONS

Sworn to before me this
24 the day of June, 2019

THE HONORABLE SARAH NETBURN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK