**Federal Defenders OF NEW YORK, INC.**

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

March 11, 2020

By Hand and ECF
Honorable Gregory H. Woods
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *United States v. Paul Rinfret*
      **19 CR 535 (GHW)**

Dear Judge Woods:

June 28th is the most significant date in Paul Rinfret's life.  Now 71-years-old, Paul married Denise D'Amico on June 28, almost 45-years ago.  The two went on to parent three children and now have five grandchildren.  The Rinfret family was uncommonly close.  Denise and one daughter ran a business together.  Son John Paul followed his father into the investment business and middle child Amanda considered her father her best friend.  **See Exhibit A**, letter from Amanda Rinfret.  The family was constantly together whether for special occasions or just a random Friday dinner.

June 28th is also the date when Paul's crimes came to light and he lost everything.  On his 44th wedding anniversary, Paul and his wife were watching three of their grandchildren when agents came to the house and arrested him.

Honorable Gregory H. Woods  March 11, 2020
United States District Judge  Page 2

Before the day was over, his wife had moved out and later filed for divorce. Two of his children have not spoken to him since that day and he has not seen any of his grandchildren.

Paul's criminal conduct was utterly unjustified, and whatever punishment this Court deems appropriate will be in addition to the steep personal cost that he has paid and will continue to pay for his actions. When he appears before the Court on March 25, 2020 in connection with his plea of guilty to securities fraud and wire fraud, I will ask the Court to take Paul's age, health and the collateral personal consequences into account and to sentence him to a year and a day in custody followed by supervision with home detention.

I.   **Family Life**

Paul comes from a small family. He and brother Maurie were the only children born to Maurice and Kathleen Rinfret. There were no close aunts, uncles or cousins growing up. In fact, for many years Paul's father was not present either. His father was always a disinterested parent and when Paul was thirteen, he left Paul's mother for another woman. Seven years later, he returned to the family, but Paul never truly accepted him back. Paul's father, mother and brother have all now passed away.

In Denise D'Amico, Paul found an opportunity to build a closer, more loving family than the one he had been born into. Paul and Denise met in college and quickly began to plan a life together. **See Exhibit B**, letter from Denise. Once they

became parents, Paul was a completely different type of father than his was. Paul was actively involved in his children's lives and years later became a doting grandfather as well. The family was tight knit, and all of the children stayed near New York as adults.

Denise states, "we had three children. Two girls and a son who Paul adored. He was a great dad who taught his children the values of an honest, hardworking life." **Ex. B**. Daughter Amanda echoes that view, writing, "my dad was the backbone of our family, my best friend, my brother's best friend, even my husband's best friend. He was an amazing dad." **Ex. A**.



*Paul with his wife, children, mother-in-law and his children's spouses*



*Paul, Denise and their grandchildren*

## II.     Offense Conduct

All of his adult life, Paul worked in finance, first trading on the stock market, primarily in fixed incomes and bonds, and later as a salesperson.  His salary, combined with the income earned from his wife's interior design business, afforded the family a comfortable lifestyle.  After the financial collapse in 2008, Paul's employer began to lose money and eventually closed.  In the wake of that closure, he found it difficult to find new employment and finally started his own business.

When he began the business, Paul did believe it would truly be successful. His first investors were members of his beloved family.  **Ex. A**.  As his investment strategies failed, Paul began to seek more investments to cover those losses and then to maintain the illusion that his business was successful and profitable.  He

Honorable Gregory H. Woods  March 11, 2020
United States District Judge  Page 5

fully acknowledges that his behavior was inexcusable.  **See** **Exhibit C**, letter from Paul Rinfret.

### III. Appropriate Sentence - 3553(a) factors

The Court must "impose a sentence sufficient, but not greater than necessary, to comply with the factors set out in 18 U.S.C. § 3553(a)(2)," i.e., "proportionality, deterrence, incapacitation, and rehabilitation." United States v. Douglas, 713 F.3d 694, 700 (2d Cir. 2013). In this case, most of the objectives of 3553 have already been accomplished and a moderate sentence of incarceration followed by supervision with home detention is warranted.

Paul, whatever his faults, loves his family.  His misguided actions were done, in part, for their benefit.  While there may have been some temporary gain to the family, in the end, his actions have caused them significant harm and has damaged his relationship with them perhaps irreversibly.

First, Paul's actions were a monumental betrayal of trust.  He took money from his family, lied about his losses and caused his children to be unwittingly intertwined with his crimes.  As his wife writes, "the realization that Paul created this illusory life of success is so hard to believe.  It has destroyed our family…The realization that the past couple of years have been a total lie is something none of us could have ever imagined." **Ex. B**.

Second, the harm to his family is not simply emotional.  Paul's wife and eldest daughter run a business together.  The business bears the family last name

and when Paul's crimes were reported in their local community paper, there was an immediate and significant financial impact on the business.  The impact on Paul's son was worse. His son worked as a money manager.  When Paul's crimes became known, concerned clients of his son's firm expressed fears that he might also be involved in his father's crimes.  Paul's son was fired.

Paul's tight-knit, loving family is not ready to forgive him and may never be ready.  His wife moved out of the family home and in with their eldest daughter the very day he was arrested.  She has filed for divorce.  His eldest daughter and his son have not spoken to him in almost nine months.  While his middle daughter is standing by him, her husband remains furious and hurt and will not condone the couple's three children visiting Paul.  Paul has also not seen his other grandchildren since his arrest in June.  He is truly a man who has lost everything, even the family home is being foreclosed.

The loss of his family weighs on Paul, as does his guilt for causing all of this misery.  As he writes, "I do not offer excuses.  I made terrible mistakes for which I have and will continue to pay. All responsibility is mine.  I hate myself for the recklessness I showed." **Ex. C**.  This is more than mere words.  Paul's isolation and guilt ████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

██████████████████████████████████████████. **See Exhibit D**, letter from social worker Angel Bosques.

Paul's isolation from his family has already punished him in a meaningful way. Moreover, as his letter to the Court attests, he has no intention or desire to commit any further crimes. I would also ask the Court to consider Paul's health and age in weighing what punishment is sufficient.

Paul is 71-years-old and life expectancy for a white male in general, per the CDC in 2017, was 76.6 years.[1] ████████████████████████████████████████████████████████████████████████████. Additionally, we must consider the access to care that Paul will receive while within the Bureau of Prisons. The BOP is of course mandated to provide medical care to its 180,000 inmates, but that care rarely matches what can be received in the community and ongoing staffing issues further effect the standard of care provided.[2] As Angel Bosques discusses in his letter, incarceration takes a toll on inmates' lives through "stress" and "inadequate healthcare." **Ex. D.**

When considered in this light, for a man Paul's age, a sentence in the advisory guidelines range could be tantamount to a life sentence. While Paul's

---

[1] https://www.cdc.gov/nchs/data/hus/2017/015.pdf

[2] https://oig.justice.gov/reports/2016/e1602.pdf

Honorable Gregory H. Woods  March 11, 2020
United States District Judge  Page 8

crimes are serious and the harm caused to his own family and to the victims is substantial, this crime does not warrant spending the rest of his life in prison.

### IV.  Path Forward

Paul has understood from the moment of his arrest that he deserved to pay for his crimes. He accepts that even though this is a non-violent, first offense some amount of prison is likely. Nevertheless, he hopes that amount will be measured. He hopes he will have an opportunity to reconcile with his family. He also hopes to have an opportunity to apologize to his victims and to begin to pay back what was lost.

Paul has begun to plan for how to re-enter the community after any incarceration. **Ex. D.** He is fortunate that one of his children is willing to aid him. Amanda has pledged to help support him, so that he can work to pay restitution. **Ex. A.**

### V.  Conclusion

Paul Rinfret's life will never be the same. Most defendant's, even in the face of serious crimes, maintain the support of family. A sibling, parent or partner to call, to send commissary, to welcome them once they have atoned. Unlike most, Paul's crimes have cost him everything that is important to him. Even if his children, and his former wife, forgive him some day in the future, his bond and his relationship with them will never be the same. The long years in prison

| | |
|---|---|
| Honorable Gregory H. Woods<br>United States District Judge | March 11, 2020<br>Page 9 |

recommended by the guidelines are not necessary to punish him and worse they would put his health at risk.

    Instead, I urge the Court to sentence Paul to a year and a day in prison – a significant amount for a man who has never before been arrested.  The addition of home detention at the start of supervision would add to the punitive effect of his sentence, but would do so in a way that would lessen the impact on his health and that would allow him to begin the process of reconciliation and restitution sooner.  Such a sentence would be sufficient, but would not be more punitive than necessary.

    For the reasons set forth above, I respectfully urge the Court to impose a sentence of a year and a day, to be followed by a term of three years of supervised release with the first year of supervision to be served on home detention.

    Thank you very much for your consideration of this request.

    Respectfully submitted,

/s/ _____
Jennifer E. Willis
Assistant Federal Defender
 (212) 417-8743

cc:    AUSA Robert L. Boone
       Paul Rinfret