UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA              :

   -*v*.-                                             :         19 Cr. 535 (GHW)

PAUL A. RINFRET,                              :

                Defendant.          :

------------------------------------------------------------x

# THE GOVERNMENT'S SENTENCING MEMORANDUM

                                                              GEOFFREY S. BERMAN
                                                              United States Attorney
                                                              Southern District of New York

Robert L. Boone
Assistant United States Attorney

- Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA                          :

   -v.-                                                              :          19 Cr. 535 (GHW)

PAUL A. RINFRET,                                         :

                    Defendant.                       :

------------------------------------------------------------x

## PRELIMINARY STATEMENT

The Government writes in advance of the sentencing of defendant Paul A. Rinfret, which is currently scheduled for March 25, 2020, at 10:00 a.m., and in response to the defendant's sentencing submission dated March 11, 2020. On October 8, 2019, the defendant pled guilty to securities fraud in violation of Title 15, United States Code, Sections 78j(b) and 78ff and Title 17, Code of Federal Regulations, Section 240.10b-5, and wire fraud in violation of Title 18, United States Code, Section 1343. The defendant pled guilty pursuant to a *Pimentel* letter, which contained a Guidelines range of 63 to 78 months' imprisonment. For the reasons discussed below, the Government respectfully submits that a sentence within that applicable Guidelines range is sufficient but not greater than necessary to promote the legitimate ends of sentencing.

## BACKGROUND

### A. The Defendant's Offense Conduct

As detailed in the Presentence Investigation Report ("PSR"), as well as the complaint ("Complaint" or "Compl.") and indictment ("Indictment") in this matter, Rinfret engaged in a scheme to defraud potential and actual investors in a limited partnership he controlled, Plandome Partners L.P. ("Plandome Partners"). Through his fraudulent scheme, Rinfret obtained approximately $20 million from investors on the false claim that he would utilize their

1

investment funds for trading. (Compl. ¶ 6.) In reality, Rinfret used only a small portion of the victims' invested funds to engage in actual trading, and instead used most of the victims' money to purchase luxury goods and high-end vacation rentals for himself and family members. (*Id*. at ¶ 6(e); *see also* PSR ¶ 33.)

Formed in 2011, Plandome Partners was a New York limited partnership controlled by Rinfret. (Compl. ¶ 5.) From 2016 through 2019, Rinfret offered potential investors the ability to invest in Plandome Partners through the purchase of limited partnership interests. (*Id*. at ¶ 6(a).) In soliciting investments, Rinfret falsely represented to victims that he would use all of their investment funds to trade futures contracts tied to the Standard & Poor's 500 index, a stock market index based on the market capitalizations of 500 large publicly-traded companies, using a propriety trading algorithm he had purportedly developed that had a proven track record. (*Id*. at ¶ 6(b).) Rinfret represented that his compensation would be in the form of a fee equivalent to 25% of the net profits of the trades. (*Id*.)

In reality, once Rinfret obtained investor funds, he used only a small portion of those funds to engage in actual trading. (*Id*. at ¶ 6(e).)   Instead, Rinfret used most of the victims' money to purchase luxury goods and high-end vacation rentals for himself and family members. (*Id*.) Additionally, when he did actually engage in trading with victims' funds, he generated losses. (*Id*.) To prevent his victims from seeking a return of their money, and to induce additional investments, Rinfret falsely reported excellent investment performance results to his victims through false and fraudulent monthly account statements. (*Id*. at ¶ 6(f).)

Some examples of false statements Rinfret told his victims are as follows:

a. On September 9, 2016, Rinfret emailed a victim ("Victim-1") stating, in sum and substance, "I think by now everyone knows that I like to communicate during or after a big move

in the stock market. Today was our best day in memory. It should translate into a very good month. Our methodology continues to perform exceptionally well." (*Id.* at ¶ 7(b)(iii).) In reality, neither Plandome Partners nor Rinfret had been conducting any trading, successful or otherwise, with Victim-1's funds when this representation was made. (*Id.* at ¶ 7(c).)

      b.      Rinfret emailed another victim ("Victim-2") documents purporting to be account statements from a particular brokerage firm (the "Brokerage Firm") for the month of November 2018, showing a beginning balance of approximately $20 million and a net trading profit of approximately $1 million for the month. (*Id.* at ¶ 7(d).) In fact, the balance of Plandome Partners' account at the Brokerage Firm for that month was approximately $487,136 and there was a net trading loss that month of approximately $328,840. (*Id.*)

Despite having repeatedly represented that victims' money would be invested and traded in brokerage accounts, Rinfret transferred millions of dollars of his victims' money to his relatives and their businesses, and used victim money to buy tens of thousands of dollars' worth of jewelry, rent a 6-bedroom vacation home in Southampton, New York, and purchase custom made cabinets, among other things. (*Id.* at ¶ 8.)

  **B. The Charges and The Defendant's Guilty Plea**

Indictment 19 Cr. 535 (GHW) charged Rinfret with participating in the securities fraud and wire fraud scheme described above. On October 8, 2019, the defendant pled guilty to Count One of the Indictment, which charged securities fraud in violation of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18, United States Code, Section 2, and Count Two of the Indictment, which charged wire fraud in violation of Title 18 United States Code, Sections 1343 and 2.

  **C. The Applicable Guidelines**

As set forth in the Government's *Pimentel* letter and the PSR, the base offense level is seven; a twenty-level increase is warranted pursuant to U.S.S.G. § 2B1.1(b)(1)(K) because the loss associated with the offense was more than $9,500,000 but less than $25,000,000; and a two-level increase is warranted pursuant to U.S.S.G. § 2B1.1(b)(10)(C) because the offense involved sophisticated means (*See* PSR ¶ 47-49.)  Accordingly, given that a three-level decrease is warranted pursuant to U.S.S.G. § 3E1.1(a) and (b) due to the defendant's acceptance of responsibility, Rinfret's total offense level is twenty-six.  (*Id.* at ¶ 57.)  The defendant has zero criminal history points and is in Criminal History Category I. (*Id.* at ¶ 60.).  Accordingly, the applicable Guidelines range is 63 to 78 months' imprisonment. (*Id.* at ¶ 90.)

The Probation Department has recommended that Rinfret be sentenced to 63 months' imprisonment followed by a three-year term of supervised release.  (*Id.* at Pg. 23.)

## DISCUSSION

As the Court is aware, the Sentencing Guidelines still provide strong guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005).  Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings.  *Id.* at 49. After that calculation, however, the Court must consider the seven factors outlined in Title 18, United States Code, Section 3553(a), which include the nature and circumstances of the offense, the history and characteristics of the defendant, the need to adequately deter criminal conduct and promote respect for the law, and the need to protect the public from further crimes of the defendant.  *Id.* at 50 & n.6.

4

Here, a Guidelines sentence is appropriate and would meet the objectives set forth in 18 U.S.C. § 3553(a), given (1) the nature and circumstances of the offense and the history and characteristics of the defendant; and (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; and (B) to afford adequate deterrence to criminal conduct. *See* 18 U.S.C. § 3553(a)(1), (2)(A)-(B).

A. The Nature and Seriousness of the Offense

Rinfret's conduct was truly egregious. He orchestrated an approximately $20 million fraud that spanned over three years and claimed several hard working people as victims. Rinfret's conduct was also shockingly brazen. Rinfret raised tens of millions of dollars by claiming he would invest his victims' money using "a propriety trading algorithm" that he knew did not exist. (Compl. ¶ 6(b)). Indeed, Rinfret invested only a nominal amount of his victims' money in the stock market and instead used the overwhelming majority of it to fund his extravagant lifestyle. To support his fanciful algorithm tale, Rinfret told a myriad of other boldface lies – claiming he had invested a victim's money in a brokerage account that did not exist (*Id.* at ¶ 7(a)), purporting to have had the "best [trading] day in memory" when he had not traded any victim money (*Id.* at ¶ 7(b)(iii)), and showing a victim an account statement with a monthly balance of $20 million when the balance was actually less than $500,000 (*Id.* at ¶ 7(d), among other things. Importantly, Rinfret's fraud was not a momentarily lapse. Rather, it was a series of brazen lies and outright theft that spanned a multi-year period.

Rinfret's lies continued even as his scheme began to unravel. As noted in the Complaint, by April 2019, several victims attempted to get Rinfret to return their money. (*Id.* at ¶ 9(a).) As pressure to return victim money mounted, Rinfret admitted to certain victims that he had lost

their money. (*Id*. at ¶¶ 9(b), 9(c).) However, Rinfret claimed he could earn their money back if he was given even more money to invest. (*Id*. at ¶¶ 9(b), 9(c), 9(d), 9(e).) Accordingly, in an attempt to get a victim to give him an additional $250,000, Rinfret claimed he had already raised $250,000 from another investor and showed that victim a falsified bank statement purporting to show a $250,000 wire transfer he had received. (*Id*. at ¶¶ 9(d), 9(e).) Rinfret's web of lies ended only when he was arrested.

   B. Rinfret's History and Characteristics

Rinfret committed a serious crime that was fueled by his own greed. Unlike many defendants who appear before the Court, Rinfret did not commit his crime out of any pressing financial need. Rather, he simply wanted to live an extravagant lifestyle. As noted in the Complaint, Rinfret spent $43,000 on an engagement party in Manhattan for his son, and thousands of dollars on jewelry, custom cabinets, and a Hampton's rental property, among other things. (Compl. ¶ 8.) Rinfret's desire to live an extravagant lifestyle is obviously not a mitigating factor, but instead speaks directly to his greed and sense of entitlement. Moreover, Rinfret's conduct was not a brief aberration. As discussed above, Rinfret repeatedly stole money from various investors over the course of three years. His conduct was brazen, calculated, and pervasive and showed no regard for the trust his victims placed in him.

   C. The Need for Deterrence and to Promote Respect for the Law

The fact that Rinfret ran a multi-year scheme enabling him to steal approximately $20 million from investors makes plain the need to impose a Guidelines sentence to afford specific deterrence and promote respect for the law.

But general deterrence is also particularly important. Investment schemes such as this one rely on unsophisticated investors placing trust in an individual purporting to have experience

in finance. Because victims of such schemes oftentimes do not understand, or do not want to believe, that they have been defrauded by someone they trust, the schemes can be both highly lucrative and difficult to detect. As such, significant punishment is necessary to deter others from similar conduct. To deter criminal conduct by individuals like Rinfret, effectuate the purpose of the securities fraud laws, and send an appropriate message that this type of fraud will not be tolerated, a sentence within the Guidelines range is warranted.

## CONCLUSION

For the aforementioned reasons, the Government respectfully submits that a Guidelines sentence is appropriate in this case and sufficient but not greater than necessary to promote the legitimate ends of sentencing.

Dated: New York, New York
       March 18, 2020

>                         Respectfully submitted,
>
>                         GEOFFREY S. BERMAN
>                         United States Attorney
>
>                    By:  s/ Robert L. Boone
>                         Robert L. Boone
>                         Assistant United States Attorney
>                         (212) 637-2208